UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

JACQUELINE FISHER,                                        :
                                                          :
                                      Plaintiff,          :
                                                          :
-v -                                                      :
                                                          :
AETNA LIFE INSURANCE COMPANY,                             :
                                                          :
                                      Defendant.          :

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/12/2020

1:15-cv-283-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

Plaintiff Jacqueline Fisher is married to William Dunnegan, a named partner at Dunnegan &

Scileppi LLC ("D&S").  On behalf of D&S, Dunnegan selected a health insurance plan offered by

Defendant Aetna Life Insurance Company ("Aetna").  D&S's plan covered Fisher.

Fisher's doctor prescribed her a brand-name medication called Effexor XR that has a generic

equivalent.  Because Fisher's doctor never certified that Effexor was medically necessary, Aetna

refused to reimburse Fisher for the cost of the Effexor per the terms of D&S's insurance policy.

Fisher disagreed with Aetna's decision, so she sued.  After a bench trial, the Court rejected

Fisher's first claim for relief.  *See Fisher v. Aetna Life Ins. Co.* (*Fisher I*), No. 1:15-cv-283 (GHW), 2020

WL 2792994 (S.D.N.Y. May 29, 2020).  While the parties were litigating this case, Fisher sued Aetna

again based on charges for Effexor for policy year 2015 instead of 2014.  Fisher made basically the

same arguments in that case that she makes here.  As the parties litigated the second case, Aetna

admitted that it made two mistakes in administering the Group Policy.  The first worked to Fisher's

benefit; in other words, Aetna had undercharged Fisher.  But the second worked against Fisher.

Aetna acknowledged that, without correcting for the first mistake, it had overcharged Fisher by

about $60 in 2015.  Aetna admits that it made the same errors in policy year 2014.

Both parties now move for summary judgment on Fisher's second claim for relief.  Because

Aetna admits that it overcharged Fisher by about $180, Fisher's motion is GRANTED in part.  But

because her other arguments are unavailing, Fisher's motion is otherwise DENIED. For the same reasons, Aetna's cross motion is also GRANTED in part and DENIED in part.

## I. BACKGROUND

*Fisher I* provides most of the relevant background. 2020 WL 2792994, at *1-10. After Fisher brought this case, D&S elected to renew its coverage with Aetna for 2015 and again chose the small business policy. Aetna's Local Rule 56.1 Statement ("56.1"), Dkt No. 111, ¶ 105. Fisher then filed *another* case complaining about Aetna's calculation of her Effexor prescriptions for the 2015 plan year. *Id.* In that case, Judge Sullivan remanded the decision to deny Fisher's benefits back to Aetna because "the Court [was] unable to determine the basis for Aetna's decision to apply the cost of Plaintiff's purchases of Effexor to her deductible but not to her out-of-pocket limit, or whether that decision was made in error[.]" *Fisher v. Aetna Life Ins. Co.* (*Fisher II*), No. 16-cv-144 (RJS), 2017 WL 1246133, at *6 (S.D.N.Y. Mar. 31, 2017). After remand, Aetna discovered that it had misapplied the brand-generic cost differential to Fisher's claims in 2014 and 2015. *Id.* ¶ 108. On cross motions for summary judgment after remand, Judge Sullivan held that "(1) Plaintiff's family's total medical expenses did not exceed the family plan's out-of-pocket limit for 2015 and (2) Plaintiff is entitled to $64.32 in reimbursement representing the copay differential for May-December 2015." Mar. 31, 2019 Order in 16-cv-144 (RJS) (*Fisher III*), Dkt No. 108-1, at 13.

After the Court issued its opinion in *Fisher I* in this case, the parties cross moved for summary judgment. Dkt Nos. 102-109. Both parties filed oppositions, Dkt Nos. 110-13, and replies, Dkt Nos. 116-17.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" and a fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" do not preclude summary judgment. *Id.*

The movant bears the initial burden of showing "the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the movant carries that burden, the burden shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Id.* Indeed, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial'" to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)) (emphasis omitted). The non-movant must present more than a mere "scintilla of evidence in support of" her position. *Anderson*, 477 U.S. at 252. She also "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. And the non-movant "may not rely on conclusory allegations or unsubstantiated speculation" on summary judgment. *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted). At bottom, "there must be *evidence* on which the jury could reasonably find for the [non-movant]" to preclude summary judgment. *Anderson*, 477 U.S. at 252 (emphasis added).

**B. ERISA**

"Under ERISA, if the plan administrator or fiduciary is granted discretionary authority under the plan to make eligibility determinations or construe the terms of the plan, judicial review is deferential and the reviewing court asks only if the administrator's conclusion is arbitrary and capricious." *Fisher I*, 2020 WL 2792994, at *11 (citing *Ocampo v. Bldg. Serv. 32B-J Pension Fund*, 787 F.3d 683, 690 (2d Cir. 2015)); *Elizabeth Boey Chau, M.D. v. Hartford Life Ins. Co.*, No. 1:14-cv-8484 (GHW), 2016 WL 7238956, at *2 (S.D.N.Y. Dec. 13, 2016)). As noted in *Fisher I*, D&S's contract

with Aetna (the "Group Policy") "confers discretion on Aetna." *Id.* Thus, the Court will "set aside

Aetna's determination only if it is arbitrary and capricious." *Id.*

> A decision is arbitrary and capricious if it is "without reason, unsupported by
> substantial evidence or erroneous as a matter of law" or "where a plan administrator
> or fiduciary has imposed a standard not required by the plan's provisions, or
> interpreted the plan in a manner inconsistent with its plain words." A reviewing court
> "may not upset a reasonable interpretation by the administrator." If the parties offer
> "competing yet reasonable interpretations" of a policy, the reviewing court "must
> accept the interpretation offered by the administrators." The Second Circuit has
> "concluded that a district court's review under the arbitrary and capricious standard is
> limited to the administrative record."

*Id.* at *11-12 (quoting *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999);

*Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995); *Pagan v. NYNEX*

*Pension Plan*, 52 F.3d 438, 443 (2d Cir. 1995); and *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d

Cir. 1995) (brackets omitted)).

## III. DISCUSSION

Fisher is entitled to summary judgment on her remaining claim. Fisher argues that "after

[she] met the deductible under the [Group Policy], and after Fisher continued to purchase a brand-

name prescription drug, Effexor XR®, Aetna failed to meet its obligation to reimburse Fisher for

the difference between (i) the cost of the generic equivalent of Fisher's brand-name drug, and (ii) the

$10 copayment for that generic drug." Fisher's Memorandum of Law in Support of Motion for

Summary Judgment, Dkt No. 103, at 1.

Aetna now admits that it made two mistakes in calculating Fisher's benefit. First, in

processing Fisher's Effexor prescriptions from January 30 through April 29 of 2014, Aetna applied

an additional charge for each prescription to reduce Fisher's outstanding deductible. 56.1 ¶ 114.

Aetna also applied $45.97 in processing her May 27 prescription. *Id.* ¶ 86. Aetna therefore

concluded that Fisher had satisfied her $4,000 family deductible for the 2014 policy year. *Id.*

This mistake redounded to Fisher's benefit. The additional charge for brand-name

medications should not have applied to Fisher's deductible because it was not medically necessary.

*Id.* ¶¶ 64, 67.  Aetna thus began to fully reimburse Fisher's medical expenses earlier than the Group Policy required.  Aetna has chosen not to seek recoupment of these reimbursements.[1]

Aetna's other mistake worked to Fisher's detriment.  Aetna charged Fisher more than it should have because it applied the wrong coinsurance/copayment scheme to Fisher's Effexor prescriptions.  *Id.* ¶ 108.  The Group Policy said:  "You will have to pay the difference between the cost of the Prescription Drug on the higher tier and the cost of the Prescription Drug on the lower tier.  The cost difference must be paid in addition to the lower tier Copayment or Coinsurance."  *Id.* ¶ 64.  When calculating the "lower tier Copayment or Coinsurance[,]" Aetna applied the 50% coinsurance applicable to non-preferred brands instead of the $10 copay applicable to generic drugs. *Id.* ¶ 108.

Aetna concedes this was an error.  Aetna calculated that, without correcting for the alleged error in how it calculated when Fisher satisfied her deductible, it underpaid Fisher by $162.62.  *Id.* ¶ 115; *see also* Aetna's Memorandum of Law in Support of Summary Judgment, Dkt No. 107, at 23 n.13 (providing calculations).  Fisher argues that the amount of underpayment was $179.76.  "The discrepancy results from Aetna's assumption that the cost of the generic in December 2014 was $18.54 and not $35.68, as it was for the rest of 2014."  56.1 at 37.  But Aetna "stipulated that the cost of the generic was $35.68 in 2014."  *Id.* (citing Joint Stipulation, Dkt No. 63 ¶ 73).  Fisher is correct that Aetna stipulated that the cost of Effexor was $35.68 in 2014 and Aetna does not contest this argument, so the Court determines that the correct figure is $179.76.  Aetna has offered to pay Fisher $162.62, but Fisher has declined that offer.[2]

Because Aetna has admitted its error, Fisher is entitled to judgment on her claim for $179.76. Aetna admits it overcharged Fisher, so its administration of the Group Policy was arbitrary and

---

[1] Fisher disputes that Aetna made a mistake in calculating when she satisfied her deductible.  *See id.* at 37.  Because Aetna is not seeking recoupment of these payments, the Court does not resolve the issue.

[2] Fisher argues that Aetna's settlement offer is an "apparent bid to avoid a judgment and to moot [a] class action." Fisher's Opposition to Aetna's Motion for Summary Judgment ("Fisher Opp."), Dkt No. 110, at 11.

capricious.  A plan administrator's "decision is arbitrary and capricious if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law' or 'where a plan administrator or fiduciary has imposed a standard not required by the plan's provisions, or interpreted the plan in a manner inconsistent with its plain words.'"  *Fisher I*, 2020 WL 2792994, at *11 (quoting *Kinstler*, 181 F.3d at 249) (brackets omitted).  Aetna has effectively conceded that its interpretation of the Group Policy was arbitrary and capricious.

Aetna's counterargument is unavailing.  Aetna argues that Fisher did not present this argument in her administrative appeal within Aetna.  As noted in *Fisher I*, "[t]he Second Circuit has 'concluded that a district court's review under the arbitrary and capricious standard is limited to the administrative record.'"  2020 WL 2792994, at *12 (quoting *Miller*, 72 F.3d at 1071) (brackets omitted).  Fisher does not dispute this principle but argues that the "administrative record" limitation "applies only to the Court's consideration of new facts or new evidence, not new legal arguments."  Fisher Opp. at 2 (citations omitted).  Aetna disagrees, arguing that Fisher must have presented arguments in her administrative appeal to preserve them for later judicial review.

The Second Circuit has not resolved this issue, and both sides have cited persuasive authority for their positions.  But the Court need not decide this issue because when a plan administrator has conceded error, the administrative record limitation serves no useful purpose.  There is no danger that district courts will become "substitute plan administrators" when the administrator itself concedes that it administered the plan incorrectly.  *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 217 n.11 (2d Cir. 2015) (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th

that question?  Like so much else in this litigation, it seems inexplicable.  But in any event, the *Gomez* exception does not apply here because the Court hasn't yet entered judgment for Fisher.

Aetna also argues briefly that the matter should be remanded.  But remand is unnecessary when it would be a "useless formality."  *Pepe v. Newspaper & Mail Deliverers'-Publishers' Pension Fund*, 559 F.3d 140, 149 (2d Cir. 2009) (quoting *Miller*, 72 F.3d at 1071).  A remand here would be just such a useless formality because Aetna has admitted its error.  So Fisher is entitled to summary judgment on her second claim.

Fisher's recovery is limited to $179.76, however, because her other arguments are unpersuasive.  Aetna again argues that Fisher cannot present these arguments because they do not appear in the administrative record.  The Court need not decide whether that is correct because Fisher's arguments fail on the merits.

Fisher first argues that Aetna misapplied the plain meaning of the "out-of-pocket limit" provision in the Group Policy.  That provision states:

> When You have met Your In-Network Out-of-Pocket Limit in payment of In-Network Deductibles, Copayments, and Coinsurance for a Plan Year in the Schedule of Benefits in section XIV of this Certificate, We will provide coverage for 100% of the Allowed Amount for Covered in-network Services for the remainder of that Plan Year.  If other than Individual coverage applies, when members of the same family covered under this Certificate have collectively met the family In-Network Out-of-Pocket Limit in payment of In-Network Deductibles, Copayments and Coinsurance for a Plan Year in the Schedule of Benefits, We will provide coverage for 100% of the Allowed Amount for the rest of that Plan Year.

56.1 at 21-22.

Aetna applied the $10,000 family deductible because Fisher did not have individual coverage. Fisher argues that Aetna should have applied the lower, individual deductible to her claims rather than the family deductible.  But Fisher did not have individual coverage.  She was covered as a family beneficiary on Dunnegan's plan.  Thus, Aetna properly applied the Group Policy's family deductible:  "*If other than Individual coverage applies*, when members of the same family . . . have

collectively met the *family* In-Network Out-of-Pocket Limit . . . , We will provide coverage for 100% of the Allowed Amount for the rest of that Plan Year." *Id.* (emphases added).

Judge Sullivan rejected this argument in *Fisher III*. *Fisher III* explained that

> Plaintiff believes that the first sentence is controlling, and that "You" and "Your" refer to her individually, thereby triggering the individual out-of-pocket limit. Aetna, on the other hand, argues that the second sentence directs that the family out-of-pocket limit applies, and that under that provision, Aetna's duty to cover all of Plaintiff's health expenses arose only when her family, taken together, met the [out-of-pocket limit].

*Fisher III* at 9. Judge Sullivan rejected Fisher's argument:

> Aetna is clearly correct here based on the language of the contract. As Aetna points out, the second sentence of Section IV.D of the Policy provides specifically that "if other than individual coverage"—that is, family coverage—"applies", the out-of-pocket limit is met when the family limit is "collectively" satisfied by the family's medical expenses. The parties agree that Plaintiff, the spouse of a D&S partner, was covered as a family member under D&S's group policy. The family limit is therefore applicable to Plaintiff's reimbursement requests.

*Id.* (citations and brackets omitted). *Fisher III* thus held that Aetna was entitled to summary judgment based on the unambiguous contractual language.

So too here. Fisher concedes that she is making the same argument here that Judge Sullivan rejected. The Court agrees with Judge Sullivan's persuasive analysis. The correct interpretation of the unambiguous terms of a plan is not arbitrary and capricious. *See Cauntiz v. IBM Corp.*, No 15-cv-9281 (VB), 2016 WL 6956631, at *3 (S.D.N.Y. Nov. 28, 2016) ("Therefore, the Plan Administrator's decision was not only not arbitrary and capricious, it was a correct interpretation of the Plan."). Even if Fisher's interpretation were reasonable (which it isn't), Aetna's interpretation is also reasonable. And under the deferential standard of review that applies to ERISA claims, "[i]f the parties offer 'competing yet reasonable interpretations' of a policy, the reviewing court 'must accept the interpretation offered by the administrators.'" *Fisher I*, 2020 WL 2792994, at *11 (quoting *Pagan*, 52 F.3d at 443) (brackets omitted)).

Fisher next argues that she is entitled to relief under the Affordable Care Act ("ACA"). Fisher argues that, even though she was covered by a family policy, she had to meet only the

individual out-of-pocket limit.  There are two relevant statutory provisions.  Start with 42 U.S.C.

§ 18022(c):

> The cost-sharing incurred under a health plan with respect to self-only coverage or coverage other than self-only coverage for a plan year beginning in 2014 shall not exceed the dollar amounts in effect under section 223(c)(2)(A)(ii) of title 26 for self-only and family coverage, respectively, for taxable years beginning in 2014.

42 U.S.C. § 18022(c)(1).  Then turn to 26 U.S.C. § 223(c)(2)(A)(ii):  "[T]he sum of the annual

deductible and the other annual out-of-pocket expenses required to be paid under the plan (other

than for premiums) for covered benefits" cannot "exceed—(I) $5,000 for self-only coverage, and

(II) twice the dollar amount in subclause (I) for family coverage."

Fisher also relies on a 2015 regulation (the "2015 Rule") promulgated by the Department of

Health and Human Services ("HHS"), which clarified these provisions.  HHS noted that "[t]he

annual limitation on cost sharing for self-only coverage applies to all individuals regardless of

whether the individual is covered by a self-only plan or is covered by a plan that is other than self-

only."  80 Fed. Reg. 10750, 10824-25 (Feb. 27, 2015).  And under the 2015 Rule, "family high

deductible health plan[s] cannot require an individual in the family plan to exceed the annual

limitation on cost-sharing for self-only coverage."  *Id.*; *see also Fisher III* at 10.

The 2015 Rule supports Fisher's interpretation.  Fisher presented this argument to Judge

Sullivan, who held in *Fisher III* that the 2015 Rule:

> is consistent with Plaintiff's reading of the Policy, since it provides that the out-of-pocket limit for an individual covered under a family plan is met at the earlier of either when (1) the family's cost-sharing expenditures meet the family limit *or* (2) the individual beneficiary's cost-sharing expenditures hit the individual cap.

*Fisher III* at 10-11.

But the 2015 Rule does not apply to Fisher's policy.  Judge Sullivan noted that the 2015 Rule

was "of no use to Plaintiff" because the 2015 Rule said "that it would only apply *prospectively*."  *Fisher*

*III* at 11 (citations omitted); *see also* 80 Fed. Reg. at 10825 ("We note that 2016 plans must comply

with this policy.").  In a jointly prepared Frequently Asked Questions document (the "FAQs"), the

Department of Labor, HHS, and the Treasury Department (the "Departments") wrote:  "Q2.  Does the clarification of section 1302(c)(1) of the Affordable Care Act apply for plan or policy years that begin in 2015?  No.  The Departments will apply this clarification only for plan or policy years that begin in or after 2016."  FAQs about Affordable Care Act Implementation (Part XXVII), at 2.[5]  Because the Group Policy was issued for policy year 2014, the 2015 Rule does not apply.

Fisher's argument to the contrary is clever but ultimately unpersuasive.  In her reply, Fisher clarifies that she "is not arguing that she was only required to meet the individual Out-of-Pocket Limit in 2014 because HHS promulgated a regulation effective in 2016."  Fisher's Reply Memorandum in Support of Summary Judgment, Dkt No. 117, at 7.  Rather, Fisher argues that "the statute—at all times, including 2014—only required Fisher to meet the individual Out-of-Pocket Limit."  *Id.*  So, according to Fisher, "HHS's interpretation of the statute clarified what the statute always meant, even in 2014."  *Id.*

The problem with this argument is that the Departments explicitly said that the 2015 Rule would not apply retroactively.  If the Departments believed that the text of the ACA required the 2015 Rule's interpretation, they likely would have said so.  But instead, the Departments chose to defer its implementation until 2016.  That strongly suggests that the Departments did not believe that the ACA's text required the 2015 Rule's interpretation.

Fisher responds that she "is not bound by HHS's decision not to enforce the statute until 2016."  *Id.*  She argues that the decision not to enforce the 2015 Rule until 2016 was simply a decision not to bring "enforcement actions[,]" which "could have been made for a variety of policy reasons."  *Id.* at 7-8.  But the 2015 Rule and the FAQs are at odds with that interpretation.  The 2015 Rule says that "2016 plans must comply with" the 2015 Rule's new interpretation of the cost-sharing provision.  80 Fed. Reg. at 10825.  It doesn't say anything about enforcement actions.  And

---

[5] https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-xxvii.pdf.

even if the 2015 Rule is ambiguous on this point, the FAQs cut strongly against Fisher's interpretation. Asked whether "the clarification of section 1302(c)(1) of the Affordable Care Act appl[ies] for plan or policy years that begin in 2015[,]" the Departments responded "[n]o" unequivocally. FAQs at 2. That response conflicts with Fisher's interpretation. Fisher argues that the 2015 Rule's interpretation applied before 2016, but that the Departments just chose not to enforce it until then. If true, the 2015 Rule's clarification would have "appl[ied]" in 2015. *Id.* Yet the Departments said just the opposite—that the 2015 Rule applied only in 2016 and beyond.

Stepping back, it is implausible that the Departments intended the result Fisher urges. The 2015 Rule says that pre-2016 plans need *not* comply with its interpretation. But Fisher argues that aggrieved consumers *were* permitted to sue based on the same interpretation. That is an odd result. If the Departments intended to open the door to private lawsuits based on their interpretation, they probably would have said something to that effect. But they didn't. Indeed, Fisher has pointed to nothing in the 2015 Rule or elsewhere to support her interpretation. For those reasons, even assuming that the Court can consider this argument, it is unpersuasive.

Fisher's final argument is that her purchases of Effexor XR count toward her out-of-pocket limit. The Court addressed, and rejected, that argument in *Fisher I*. *See* 2020 WL 2792994, at *12-13. The Court adopts its prior analysis here. Fisher raises another argument, again based on 42 U.S.C. § 18022(c). But that section explicitly says that "[t]he term 'cost-sharing' . . . does not include . . . spending for non-covered services." 42 U.S.C. § 18022(c)(3). To qualify as a "covered service" under the Group Policy, the service must be "medically necessary." 56.1 ¶ 56. As explained in *Fisher I*, Fisher's doctor never certified that her Effexor was medically necessary relative to the generic. *See* 2020 WL 2792994, at *13. So Fisher's Effexor was not a covered service and section 18022(c) is again no help to Fisher.

In any event, Fisher's family did not meet its deductible even including the charges for Effexor. Fisher contends that she spent $7,660.68 out of pocket in 2014. She argues that she is

therefore entitled to damages of $2,660.68. But that assumes that the $5,000 individual out-of-pocket limit applies to Fisher's claims. As explained above, that is incorrect; the $10,000 family out-of-pocket limit applies to Fisher's claims. So even if Fisher's purchase of Effexor did count toward her out-of-pocket limit, she has not sustained damages.

## IV. CONCLUSION

Both parties' cross motions for summary judgment are GRANTED in part and DENIED in part. Fisher is entitled to $179.76 on her second claim for relief, so her motion is partly granted. But the motion is otherwise denied. As described in *Fisher I*, Aetna is entitled to judgment on Fisher's first claim in her complaint.

The parties are directed to submit a joint letter no later than one week from the date of this order's publication describing any further motions they wish to file in this case. Otherwise, the Court will order that the case be closed.

The Clerk of Court is directed to terminate the motions pending at Dkt Nos. 102 and 106.

SO ORDERED.

Dated:  August 12, 2020

_____
GREGORY H. WOODS
United States District Judge